IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| VICTOR B. WHITE, ) | Civil Action No. 3:06-2142-MJP-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| SPORT CLIPS HAIRCUTS ) | |
| 5424 FOREST DRIVE - SUITE 118 ) | |
| COLUMBIA, SC 29206; ) | |
| SPORT CLIPS HAIRCUTS ) | |
| 378 COLUMBIANA DRIVE - SUITE 3 ) | |
| COLUMBIA, SC 29212; AND ) | |
| SPORT CLIPS HAIRCUTS ) | |
| 10210B TWO NOTCH ROAD ) | |
| COLUMBIA, SC 29223, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff, Victor B. White ("White") filed this action on July 27, 2006. On October 20, 2006, he filed a motion for summary judgment and what appears to be a motion to strike. He also filed a motion to amend. White's motion to amend was granted on March 30, 2007. In his amended complaint, White alleges claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.; the Older Worker Benefit Protection Act ("OWBPA"); 42 U.S.C. § 1981 ("§ 1981"); and 42 U.S.C. § 1983 ("§ 1983").[1]  White also appears to allege a claim for defamation under South Carolina law. Defendants are Sport Clips Haircuts, 5424 Forest Drive - Suite 118,

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e) and (g), DSC. Because these are dispositive motions, this report and recommendation is entered for review by the court.

Columbia, SC 29206 ("SC-Forest Drive"); Sport Clips Haircuts, 378 Columbiana Drive - Suite 3, Columbia, SC 29212 ("SC-Columbiana"); and Sport Clips Haircuts, 10210B Two Notch Road, Columbia, SC 29223 ("SC-Two Notch").

SC-Forest Drive and SC-Columbiana filed a motion for summary judgment on February 7, 2007.[2]  Because White is proceeding pro se, he was advised on February 9, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment could result in the dismissal of his complaint.  White filed a response on March 9, 2007.   On May 18, 2007, Defendant SC-Two Notch filed a motion to dismiss and a motion to strike in part.  A second Roseboro order was issued on May 23, 2007.  White filed a response on June 26, 2007.

## FACTS

1.   White is an African-American male.  He was over the age of 40 at the time of the alleged incidents.

2.   Sport Clips Haircuts is a nationwide sport-theme hair cutting chain specifically targeted to men and boy customers.  See Defendant's Ex. A.

3.   Keith Darnell ("Darnell") is the owner of Darnell Development, LLC, which company owns and operates the SC-Forest Drive and SC-Columbiana stores.  Darnell November 2005 Aff. (Ex. B).[3]

---

[2] These defendants addressed the claims contained in White's proposed amended complaint even though the amended complaint was not filed with the Court until March 30, 2007.

[3] "Ex. ____" refers to exhibits to the motion for summary judgment of Defendants SC-Forest Drive and SC-Columbiana.

4.  Darnell states that Darnell Development, LLC does not own or operate the SC-Two Notch franchise. Darnell Feb. 2007 Aff. (Ex. C).

5.  The SC-Two Notch franchise is owned by JKS Haircuts I, LLC. Katherine Slayden ("Slayden"), states that she oversees all aspects of the day-to-day management of the store. She states that she and the store manager (an African-American female) interviewed White in April or May 2004 and gave him a technical haircut test to judge his abilities. Slayden related that White took 45 minutes to complete the haircut (versus the normal 15-20 minutes for an experienced stylist) and the quality of the haircut was "horrible". Slayden and the store manager told White that he was not qualified to work in the store and that they would not hire him. Slayden states that White became agitated and accused Slayden of racial discrimination for not hiring him. She asked White to leave the premises. Darnell Nov. 2005 Aff., Para. 5; Slayden Aff. (Ex. F), Paras. 2-4.

6.  White was hired as a hair stylist at a Hair Cuttery franchise on or around August 31, 2004, where he worked for approximately one month. White was terminated from Hair Cuttery and the Richland County Sheriff's Department was called to the location at the time he was terminated. White Dep. (Ex. G) 29-33; Darnell Nov. 2005 Aff., Para. 6; see also White's Complaint in Civil Action Number 3:05-507-MJP-JRM (Ex. H).[4]

7.  On September 23, 2004, White applied at the SC-Columbiana location during the store's grand opening. White submitted his application to Darnell, who asked White to return the

---

[4]White filed an action in February 2005 against various counties in South Carolina, Connecticut, Ohio, and Georgia. The undersigned, on March 11, 2005, recommended that the action be dismissed without prejudice.

following day for an interview. The next day, Darnell and the SC-Columbiana store manager interviewed White. Ex. D; Darnell Nov. 2005 Aff., Para. 3.

8. Darnell states that White returned to the SC-Columbia location one day later and asked "when can I start work?" Darnell inquired of White as to whether he had worked at Hair Cuttery in Columbia. White replied yes. When asked why he excluded the information from his application, White responded that he did not work there long and did not think it was important. Darnell states that in response to his question as to why White was no longer employed with Hair Cuttery, White responded, "They didn't appreciate someone who wants to do things the right way." Darnell Nov. 2005 Aff., Para. 6.

9. Darnell told White that purposely excluding employment history information constituted falsification of the application and stated that his salon did not hire candidates who falsified their applications. After reminding White of his prior failure of the technical haircut evaluation at the SC-Two Notch location, Darnell told White that White did not have the qualifications or the retail experience to be a candidate for employment at SC-Columbiana and that the salon would not hire him. Darnell Nov. 2005 Aff., Para. 6.

10. On June 13, 2005, White submitted an application to the SC-Forest Drive location. Dannette Frost ("Frost") was the store manager at the time. White again listed no Columbia salons on the section of his application requesting his most recent past employers. Frost told Darnell that White had previously worked for her at a Great Clips for Hair Salon on Garners Ferry Road. She indicated to Darnell that White was terminated from Great Clips on his first day of employment for harassing the stylists and customers. Frost related that White became belligerent when terminated from Great Clips and a police officer had to be called to escort him from the building. Ex. E; Darnell Nov. 2005 Aff., Paras. 7-8.

4

11. Based on the additional information he obtained about White, Darnell chose not to interview White for the Forest Drive salon. Darnell spoke with White on the telephone and informed White that he did not have the needed qualifications or experience. He explained that White's falsification of applications and belligerent attitude in the interview process with prior employers made it impossible to consider hiring him. Darnell Aff., Para. 8.

12. In October 2005, White filed a Charge of Discrimination with the South Carolina Human Affairs Commission ("SCHAC") and the Equal Employment Opportunity Commission ("EEOC"). Ex. N.

13. On April 28, 2006, the EEOC issued a right to sue notice to White.

## SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." <u>Id.</u> at 718-19 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. <u>Id.</u> and <u>Doyle v. Sentry Inc.</u>, 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (<u>see</u> Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. <u>Baber</u>, citing <u>Celotex Corp.</u>, <u>supra</u>. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." <u>Mitchell v. Data Gen. Corp.</u>, 12 F.3d 1310, 1316 (4th Cir. 1993) and <u>DeLeon v. St. Joseph Hospital, Inc.</u>, 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547 (5th Cir. 1987) and <u>Evans v. Technologies Applications & Servs. Co.</u>, 80 F.3d 954 (4th Cir. 1996).

<u>PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT AND MOTIONS TO STRIKE</u>

On October 20, 2006, White filed a motion for default judgment or summary judgment. He appears to claim that he should be granted default judgment because Defendants' answer was

6

evasive, incomplete, and harassing. White appears to be arguing that in denying his allegations, Defendants have also denied certain facts he asserted in his Complaint (including that he was a registered cosmetologist, was an American Citizen, and was 42 years of age) such that he should be granted default judgment.

Pursuant to Federal Rule 8, a defendant is required to "state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies." Fed. R. Civ. P. 8(b). Review of the Answer and White's motion, however, reveals that Defendants have complied with Rule 8 by stating defenses and admitting and denying White's averments. White disputes certain facts and defenses, but has not provided a basis for default judgment or for summary judgment to be granted to him. It is, therefore, recommended that his motion be denied.

On October 20, 2006 and June 26, 2007, White filed what appear to be motions to strike. Under Rule 12(f) of the Federal Rules, the court may strike "from any pleading any insufficient defense." The striking of such defenses is a proper means of expediting legal proceedings. See, e.g., United States v. 416.81 Acres of Land, 514 F.2d 627 (7th Cir.1975); Klemens v. Air Line Pilots Ass'n Int'l, 500 F. Supp. 735 (W.D.Wash.1980). A defense is insufficient "if it is clearly invalid as a matter of law." Anchor Hocking Corp. v. Jacksonville Electric Auth., 419 F. Supp. 992, 1000 (M.D.Fla.1976). A motion to strike is a severe measure and it is generally viewed with disfavor, because it is difficult to establish that a defense is clearly insufficient. A Rule 12(f) motion should not be granted if there is a substantial question of fact or a mixed question of law and fact that cannot be resolved, even if it is possible to determine the issue by drawing inferences from acts and statements that are not disputed. A motion to strike should not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing

7

on the merits. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1381 (3d ed. 2004); see also United States v. 187.40 Acres of Land, 381 F. Supp. 54, 56 (M.D. Pa. 1974).

White's October 20, 2006 motion is titled "motion in opposition to strike Defendant, Sport Clips Haircut's request to dismiss Plaintiff's complaint..." Defendants contend that the language White refers to is just standard language and that its Answer is not a motion to dismiss. Defendants' answer has been docketed as merely that, an answer and not a motion to dismiss. Further, to the extent that White's motion is construed as a motion to strike, it is untimely, as the Answer was filed on September 22, 2006 and White did not file his motion until over twenty days later. See Fed. R. Civ. P. 12(f). White's June 26, 2007 motion is titled "motion (to strike) in opposition to defendant(s) Sport Clips Haircut ([]Two Notch) Motion to Dismiss and Strike In Part...Plaintiff's Amended Complaint." This motion, to the extent that it is a motion to strike Defendant SC-Two Notch's answer (filed May 18, 2007), is also untimely. Thus, it is recommended that White's motions to strike be denied.

### DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

In his amended complaint, White alleges that Defendants failed to hire him based on his race, age, gender, and religion in violation of Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983,[5] the ADEA, and the OWBPA.[6] Defendants SC-Forest Drive and SC-Columbiana contend that they are entitled

---

[5]To state a § 1983 claim, a plaintiff must demonstrate that one acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. See Rendall-Baker v. Kohn, 457 U.S. 830, 838 (1982). White has not shown that Defendants are state actors. Even if Defendants are state actors under § 1983, White's claims fail for the reasons discussed below. Claims of discrimination under 42 U.S.C. § 1983 are subject to the same analysis as those arising under Title VII. Holder v. City of Raleigh, 867 F.2d 823, 828 (4th Cir. 1989); Gairola v. Commonwealth of Virginia Dep't of General Serv., 753 F.2d 1281, 1285 (4th Cir.1985).

[6]The OWBPA, a 1991 amendment to the ADEA, provides that "[a]n individual may not (continued...)

8

to summary judgment because: (1) they are not state actors subject to suit under § 1983; (2) White failed to exhaust his administrative remedies as to any claim of religious discrimination; (3) White fails to establish a prima facie case under Title VII or the ADEA; (4) a legitimate, non-discriminatory explanation for the failure to hire White has been articulated, which he fails to show is pretextual; (5) White cannot establish a prima facie case of retaliation; and (6) White fails to establish a claim for defamation.  Defendant SC-Two Notch contends that its motion to dismiss (or alternatively to strike in part) should be granted because White did not exhaust his administrative remedies as to his claims against SC-Two Notch under Title VII and the ADEA.

        A.        <u>Exhaustion of Administrative Remedies</u>

Defendant SC-Two Notch contends that White's Title VII and ADEA claims against it should be dismissed because White failed to exhaust his administrative remedies as to it, as he did not name SC-Two Notch in his Charge.  Defendants SC-Forest Drive and SC-Columbiana contend that any claims made by White concerning religious discrimination should be barred because White failed to exhaust his administrative remedies as to any such claims.

Before a federal court may assume jurisdiction over a claim under Title VII, "a claimant must exhaust the administrative procedures enumerated in 42 U.S.C. § 2000e-5(b), which include an investigation of the complaint and a determination by the EEOC as to whether 'reasonable' cause exists to believe that the charge of discrimination is true."  <u>Davis v. North Carolina Dep't of Correction</u>, 48 F.3d 134, 137 (4th Cir. 1995).  Generally speaking, this court does not have subject matter jurisdiction under Title VII of claims omitted from the EEOC administrative charge.  <u>Dennis</u>

---

[6](...continued)
waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f)(1).  Here, White, who was never employed by Defendants, has not provided a basis for any OWBPA claim.

9

v. County of Fairfax, 55 F.3d 151, 156-57 (4th Cir. 1995). However, an employee's claims in this court are not strictly limited by the allegations of the EEOC charge, but rather by the scope of the EEOC investigation which can reasonably be expected to result from the charge of discrimination. King v. Seaboard Coast Line R.R. Co., 538 F.2d 581, 583 (4th Cir. 1976); EEOC v. General Elec. Co., 532 F.2d 359, 362 (4th Cir. 1976). In other words, a claim omitted from the administrative charge can be maintained in a Title VII complaint only where the claim is "reasonably related to the allegations and claims in the administrative charge or, if disclosed, the omitted claim could reasonably be expected to follow from the administrative investigation based on the deficient administrative charge." Nicol v. Imagematrix, Inc., 767 F. Supp. 744, 753 (E.D.Va. 1991). In Nicol, Judge Ellis engaged in a thorough discussion of this issue and concluded that the factual allegations contained in the narrative of the administrative charge must be analyzed to determine whether a judicial claim is within the scope of the administrative charge of discrimination.

> The ADEA provides, in part:
>
> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed–
>
> > (1) within 180 days after the alleged unlawful practice occurred; or
> >
> > (2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C. § 626(d).

In his Charge, White named as his employer "Sports Clips Haircut" and listed only the Forest Drive location. He checked that his "cause of discrimination" was based on race, sex, and age. In the "particulars" section, White wrote:

> I. (a) I was not hired for the position of hairstylist on May 10, 2005. (b) I was not hired for the position of hairs[t]ylist on August 18, 2005.
>
> III. (a) The respondent stated that I was not hired because I was too aggressive and would not be a good match. (b) the respondent stated that I was not hired because I did not have enough experience.
>
> III. I contend the reason given for my not being hired is pretextual. I was not aggressive. I have reason to believe that I was not hired because of my gender and my age. The respondent employs mostly females at the location and I believe the females are under the age of 40. (b) I contend that I did have enough experience. I believe the respondent predominately hires females under the age of 40. I also believe the respondent has hired at least one white male.
>
> IV. I therefore believe that I have been discriminated against because of my race (black) sex (male) and my age 43....

Ex. N.

White failed to exhaust his administrative remedies as to SC-Two Notch. This entity was not named in his Charge. Further, the events he complains of in the Charge (from May to August 2005) occurred well after the time he allegedly applied for a job at the SC-Two Notch location (April or May 2004). White has also failed to exhaust his remedies as to any claims of religious discrimination (against any of the defendants). He did not check the box marked "religion" in the "cause of discrimination" section and does not mention religion in the "particulars" section of the Charge. Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII or ADEA action. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (Title VII); Oscar Mayer & Co. v. Evans, 441 U.S. 750, 753 (ADEA); see also Moche v. City University of New York, 781 F. Supp. 160 (E.D.N.Y. 1992)(granting summary judgment because of plaintiff's failure to pursue the administrative procedures); Watson v. Republic Airlines, Inc., 553 F.Supp. 939 (N.D.Ga. 1982)(dismissing action where the plaintiff failed to file a charge with the EEOC as it was a condition precedent to filing a lawsuit in federal court).

11

B.     Discriminatory Failure to Hire Claims

White alleges that Defendants failed to hire him based on his race, gender, and/or age.[7] A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof[8] of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish a prima facie case of discriminatory failure to hire by offering proof that:

(1)     he is a member of the protected group;

(2)     he applied for the position in question;

(3)     he was qualified for the position; and

(4)     he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.

See Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998); Alvarado v. Board of Trustees of Montgomery Community College, 928 F.2d 118, 121 (4th Cir.1991).[9]

---

[7]White also appears in his opposition memoranda to allege national origin discrimination because he is from the Northern part of the United States, rather than the Southern part of the United States. This claim, which was not alleged in White's Complaint or Amended Complaint, is not properly before the court. Further, White has not shown that he has exhausted his administrative remedies as to this claim. Additionally, White has not shown that he is a member of a protected group. A plaintiff must first show that the "national origin group" to which he belongs is a protected class. See, e.g., Williams v. Cerberonics, Inc., 871 F.2d 452, 455 (4th Cir.1989) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)); see also Chaplin v. Du Pont Advance Fiber Systems, 293 F.Supp.2d 622 (E.D. Va. 2003)(finding that "Confederate-American" is not a protected class); Williams v. Frank, 757 F.Supp. 112 (D.Mass.1991) ("Southernness is not a protected trait").

[8]No direct proof has been offered in this action.

[9]The standard for establishing claims of employment discrimination under either Title VII or § 1981 is the same. See Gairola v. Commonwealth of Virginia Dep't of General Serv., 753 F.2d 1281, 1285-86 (4th Cir.1985). Section 1981 (which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and
(continued...)

12

(1)     Prima Facie Case

White fails to establish a prima facie case of discrimination because he has not shown that he was qualified for the positions for which he applied. Defendants SC-Forest Drive and SC-Columbiana contend that White was not qualified because he had no retail experience, he failed a previous technical evaluation at the SC-Two Notch location, he was perceived as overly aggressive, and he exhibited inappropriate behavior during the interview process. The Stylist job description in the Team Handbook sets forth the following criteria:

> The Stylist is the Team Member with whom our Clients will spend most [sic] their time while at Sport Clips. Our Clients' perception of the quality of their service and experience will rest, almost completely, on the knowledge, skill and attitude consistently displayed by our Stylists. We expect Sport Clips Stylists to communicate and demonstrate the best of Sport Clips at all times and in all ways.

Ex. A at 32. The Handbook provides criteria a Stylist is expected to meet or exceed, including:

> *Be able to execute all aspects of the Sport Clips Cutting System and a variety of styling techniques in no more than 15 minutes for the cut
> ****
> *Able to work and communicate well with Clients and other Team Members
> ****
> * Project a professional and positive attitude towards the profession and Sport Clips.

Id.

Here, White has provided nothing other than his own assertions that he was qualified for the positions in question. His resume and applications provide little in the way of retail salon experience. Slayden states that it took 45 minutes for White to complete a technical haircut

---

[9](...continued)
enforce contracts...as is enjoyed by white citizens....") does not apply to claims of gender, age, or religious discrimination. See Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987); Anooya v. Hilton Hotels Corp., 733 F.2d 48, 50 (7th Cir.1984); Kodish v. United Air Lines, Inc., 628 F.2d 1301, 1303 (10th Cir.1980); Runyon v. McCrary, 427 U.S. 160, 167 (1976); Cornell v. General Elec. Plastics, 853 F. Supp. 221 (S.D.W.Va. 1994).

13

evaluation and the quality was horrible. Slayden Aff., Para. 2. This information was conveyed to Darnell. Additionally, Darnell states that the manager of the SC-Columbiana store noted that White was very aggressive during the interview process. Darnell also states that White exhibited angry, aggressive, and intimidating behavior during his initial interview. See Darnell Nov. 2005 Aff., Paras. 3, 5, 6, 8. "It is the employer's prerogative...not the applicant's, to establish what criteria are relevant to the hiring decision...The employee does not get to write his own job description. An employer can set whatever performance standards he wants provided they are not a mask for discrimination or on forbidden grounds such as race or age." Smith v. American Nat'l Red Cross, 980 F.2d 727, 1992 WL 357850, at *3 (4th Cir. Dec. 4, 1992)(unpublished)(quoting Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1571 (7th Cir. 1989).

Further, White, as to his race claims and as to the age claim at the SC-Forest Drive location, fails to establish that he was rejected for the positions under circumstances giving rise to an inference of unlawful discrimination. Darnell states that he hired Lorteea Dean, an African American female under the age of forty who had previous retail salon experience, for the SC-Columbiana location. He states that he hired Amanda Canty, a forty-eight year old African-American female who had multiple years of retail salon experience, for the SC-Forest Drive location. Darnell Feb. 2007 Aff., Paras. 6-7. Darnell also provides that at the time White applied at the SC-Columbiana store, three of the seven stylists, including one assistant manager, were African American and three stylists, including the manager, were also over forty years old. Darnell states that at the time White applied at the SC-Forest Drive location, five of the six stylists, including the manager and one of two assistant managers, were African American, and two stylists, including one assistant manager, were over forty years old. Darnell Feb. 2007 Aff., Para. 8.

        (2)    <u>Legitimate, Non-Discriminatory Reason/Pretext</u>

Even if White can establish a prima facie case of discrimination, Defendants have articulated legitimate, non-discriminatory reasons for not hiring White. Defendants' articulated reasons were that White was untruthful regarding his prior work history in his employment applications, he lacked technical skills, and he exhibited inappropriate behavior.

A false statement made by a job applicant constitutes a legitimate, non-discriminatory reason in a failure to hire claim. See, e.g., Washington v. Digital Equip. Corp. 968 F.2d 1213, 1992 WL 167946, at *5-6 (4th Cir. July 21, 1992)(unpublished)(holding that where an applicant stated he had attained a level of education which he had not in fact attained and was, at the time of his application, an employee in good standing with his most recent prior employer when he had been terminated, and where he signed a certification that the information he offered was truthful, employer had legitimate, non-discriminatory reason to subsequently terminate applicant because it would not have hired him had it known of the falsity of the statements at the time of hire); see also Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000)("Intentional dishonesty on an employment application surely constitutes such a reason."), Jones v. Frank, 973 F.2d 673, 675 (8th Cir. 1992)(same). White admitted he knowingly omitted information regarding his immediate past employment at salons in Columbia, South Carolina. See White Dep. 60-61. In his applications, White certified that he had provided a "complete record" of his employment and that he understood that "misrepresentation or omission of facts called for [in the application] is cause for dismissal." See Exs. D and E. White admitted that he had been terminated from Great Clips after one day, at which time the supervisor called the police. White Dep. 24-26, 28. White also admitted that he was terminated from Hair Cuttery after approximately one month, at which time the sheriff's department was called. White Dep. 30-33.

Poor performance by an applicant during the interview stage of the hiring process suffices as a legitimate, nondiscriminatory reason for the rejection of the applicant. <u>Lee v. F.L. Aerospace, Inc.</u>, 1991 WL 57960, No. 9:90-674-3K, at *3 (D.S.C. January 29, 1991)(unpublished)(holding that employer's decision that plaintiff was not qualified for the position "represents the exercise of a traditional management prerogative with which the court should not interfere in the absence of proof of intentional discrimination."). As discussed above, Slayden's information concerning White's previous poor technical evaluation was relayed to Darnell. Darnell and the manager of the Columbiana store noted that White had aggressive behavior in his interviews.

White fails to show that the articulated reasons are false or pretextual. In his June 26, 2007 opposition memoranda, he appears to contend that he has shown evidence of discrimination in the form of an email, purportedly from a manager of a Sport Clips store in Ohio, in which that manager states that she can tell White he was not hired because he is male. He, however, has provided no affidavit or other verifiable information from this person. Further, the alleged information appears to concern an incident that occurred in a store in Ohio and which occurred after the events alleged in this action.

  C. <u>Retaliation</u>

White appears to allege that the Salon retaliated against him as a result of his filing his Charge of Discrimination by threatening him with trespass charges. On March 27, 2006, David Dubberly ("Dubberly"), Esq. (counsel for Defendants) wrote a letter to White in which he informed White that the Nexsen Pruet law firm represented the Salon and advised him to direct all future correspondence to Dubberly. Ex. G at 119-121; Ex. J at 6, n. 2. ; Ex. L. In his letter, Dubberly stated:

> You are hereby put on notice that you are to have no further contact with Mr. Darnell or his Sport Clips Haircuts stores except through me. Do not call Mr. Darnell. Also you are not to enter any of Mr. Darnell's stores without his express written consent. If you do so, you will be trespassing and Mr. Darnell will have no choice but to seek prosecution for that trespass to the full extent allowed under South Carolina law.

Ex. L. Defendants SC-Forest Drive and SC-Columbiana contend that White cannot establish a prima facie case of retaliation because he suffered no adverse employment action and he fails to establish a causal connection.

To establish a prima facie case of retaliation under Title VII, an employee must demonstrate that:

1)      the employee engaged in protected activity;[10]

2)      the employer took some adverse employment action against the employee; and

3)      a causal connection existed between the protected activity and the adverse action.

See Haulbrook v. Michelin North America, Inc., 252 F.3d. 696, 706 (4th Cir. 2001)(ADA); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)(ADEA and Title VII); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)(Title VII). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

---

[10]Under Title VII, a plaintiff need not have filed a formal complaint with the Equal Employment Opportunity Commission or a state deferral agency to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity. Warren v. Halstead Indus., Inc., 802 F.2d 746, cert. denied, 487 U.S. 1218 (1988) and Mitchell v. Baldrige, 759 F.2d 80 (D.C. Cir. 1985).

White fails to establish a prima facie case of retaliation. First, he fails to establish that Defendants subjected him to an adverse employment action after the time that he engaged in protected activity. An adverse employment action is a discriminatory act that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir.2004). White claims that the adverse action was prohibiting him from going to Defendants' places of business and threatening him with trespass if he did so. He fails, however, to show that this is an adverse employment action.

Second, White fails to establish a causal connection. To the extent that he complains of being defamed, no causal connection exists, as the alleged defamation[11] occurred prior to any protected activity. To the extent that White alleges that he was retaliated against for engaging in protected activity by filing this action (see White's Dep. 121), his claim fails as that protected activity occurred after Mr. Dubberly's letter. Further, White has not established a causal connection between his filing of his EEOC charge on October 14, 2005, and Dubberly's March 27, 2006 letter.

Finally, White has not shown that he was an "employee" of any of the Defendants. Section 704(a) of Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [that employee] has made a charge ... under this subchapter." 42 U.S.C. § 2000e-3(a). The Supreme Court has held that "former employees are included within § 704(a)'s coverage." Robinson v. Shell Oil Co., 519 U.S. 337 (1997). White, however, has not shown that he was ever hired or employed by Defendants, or that he in any other manner should be considered an employee of Defendants for purposes of Section 704(a) of Title VII.

---

[11] White appears to allege that he was defamed by Slayden's comments concerning the technical haircut, by being called too aggressive and by being told he acted inappropriately during the interview.

18

D.  State Law Claims

As Plaintiff fails to show that Defendants violated his rights under Title VII, the ADEA, the OWBPA, § 1981, or 1983 (as discussed above), it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed.

CONCLUSION

Based on the foregoing, it is recommended that White's motion for summary judgment (Doc. 13) be denied; White's motions to strike (Docs. 14 and 38) be denied; the motion for summary judgment of SC-Forest Drive and SC-Columbiana (Doc. 24) be granted; and the motion to dismiss of SC-Two Notch (Doc. 35) be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

July 13, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

19

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).